**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 21, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ORIENT MINERAL COMPANY;
WIL-BAU MINERAL CO. LTD.,

    Plaintiffs/Counterclaim-
    Defendants - Appellants,

v.

BANK OF CHINA,

    Defendant/Counterclaim-
    Plaintiff - Appellee,

v.

F. THOMAS ECK, III; ART
WILSON; PRESTON JONES; R.
ELLSWORTH MCKEE,

    Counterclaim-Defendants.

No. 10-4062
(D. Ct. No. 2:98-CV-00238-BSJ)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, Senior Circuit Judge, **KELLY**, and **LUCERO**, Circuit Judges.

---

Following a remand from this court, plaintiffs-appellants Orient Mineral

Company and Wil-Bao Mineral Company ("plaintiffs") sought to resuscitate

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

various claims against the Bank of China ("the Bank") which had previously been dismissed for lack of subject matter jurisdiction. The district court denied plaintiffs' myriad motions and dismissed plaintiffs' other filings which were designed to achieve this end. We take jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

## I.  BACKGROUND

This appeal stems from plaintiffs' failed investment in a Chinese gold mining venture. The relevant facts of this protracted litigation are long, detailed, and well-explained in this court's prior opinion in this matter. *See Orient Mineral Co. v. Bank of China*, 506 F.3d 980 (10th Cir. 2007). We summarize the lengthy factual history here only to the extent that it is relevant to the issues now before us.

In 1996, plaintiffs deposited $3 million into an account at the Bank for the purpose of funding a gold mining operation in China's Henan Province. A Chinese citizen, David Yue, served as the intermediary and sole interpreter between plaintiffs and the Bank for this transaction. Plaintiffs directed Mr. Yue to place a restriction on the account, under which any transfer in excess of $25,000 had to be approved by Preston Jones, a member of Orient Mineral's Board of Directors. Mr. Yue, however, never informed the Bank of plaintiffs' desired restriction. Instead, he established himself as the primary signatory on the account and embezzled nearly all of plaintiffs' funds through multiple

transfers. Each of Mr. Yue's surreptitious transfers was in an amount greater than $25,000.

Plaintiffs eventually sued the Bank in federal district court in Utah, asserting breach of contract and tort claims. Essentially, plaintiffs alleged that the Bank breached its contractual, tort, and fiduciary duties by allowing Mr. Yue to make multiple transfers in excess of $25,000 from plaintiffs' account without Mr. Jones' permission. The Bank asserted its immunity as a foreign sovereign under the Foreign Sovereign Immunities Act ("FSIA"). Additionally, the Bank asserted a counterclaim against plaintiffs for its litigation costs and attorney's fees. The Bank, however, expressly made its counterclaim contingent on the district court's finding that it could exercise jurisdiction over plaintiffs' claims against the Bank.

At trial, plaintiffs argued and presented evidence that the Bank was subject to suit in the United States courts under all three clauses of the FSIA's commercial activity exception. Additionally, in support of plaintiffs' theory that the Bank was complicit in Mr. Yue's embezzlement, Stephen Harner testified at trial that the Bank permitted two foreign exchange transfers from plaintiffs' account—one for $40,000 and one for $50,000—in violation of Chinese banking law. Specifically, Mr. Harner testified that Chinese banking law required regulatory approval for the two transfers in question and that the Bank failed to obtain the requisite approval.

The Bank argued that the FSIA's commercial activity exception was inapplicable to all of plaintiffs' claims, and it presented expert testimony from two of the Bank's employees that conflicted with Mr. Harner's testimony. Specifically, the Bank's experts testified that a Chinese banking regulation in effect at the time expressly did not require regulatory approval for foreign exchange transfers of less than $100,000.

Following trial, the district court held that the commercial activity exception only applied to plaintiffs' claims which were predicated on a single $400,000 transfer to a bank in Utah ("the Utah transfer"). Accordingly, the district court exercised jurisdiction over those claims and dismissed plaintiffs' claims stemming from other transfers for lack of subject matter jurisdiction. On the merits of the claims stemming from the Utah transfer, the district court ruled in favor of the Bank. Finally, the district court awarded the Bank costs and dismissed the Bank's counterclaim with prejudice.

Plaintiffs appealed, challenging various aspects of the district court's jurisdictional and substantive rulings. The Bank cross-appealed, challenging both the district court's decision that it had jurisdiction over plaintiffs' claims stemming from the Utah transfer, as well as the dismissal of its counterclaim.

On appeal, we affirmed the district court's jurisdictional ruling in its entirety, providing a detailed analysis of the FSIA's commercial activity exception. We also affirmed the district court's decision in favor of the Bank on

the merits of the claims arising from the Utah transfer. We reversed, however, the dismissal of the Bank's counterclaim and remanded that claim to the district court.

On remand, the district court granted the Bank's request to file an amended counterclaim. In its order, which is dated March 13, 2008, the district court mandated that plaintiffs "shall have twenty days from the date of this Order to file and serve [their] response to the Amended Counterclaim." On April 2, 2008, plaintiffs filed a motion to dismiss the Bank's counterclaim. Plaintiffs did not, however, file any other responsive pleadings within the district court's prescribed twenty-day window. The district court heard argument on plaintiffs' motion to dismiss on June 9, 2008 and took the matter under advisement.

Four days later, and roughly three months after the district court's March 13, 2008 order, plaintiffs filed a purported counterclaim to the Bank's counterclaim (hereinafter "counterclaim-in-reply"). In the counterclaim-in-reply, plaintiffs sought to revive the claims which had been previously dismissed for lack of subject matter jurisdiction, and they raised new claims against the Bank for abuse of process. With respect to jurisdiction, plaintiffs reasserted their earlier argument that jurisdiction was appropriate under the FSIA's commercial activity exception, and they asserted, for the first time, jurisdiction under 28

U.S.C. § 1607(b).[1]

The Bank filed a motion for summary judgment on plaintiffs' counterclaim-in-reply, arguing that the Federal Rules of Civil Procedure do not contemplate a counterclaim to a counterclaim and that plaintiffs should not be allowed to relitigate their previously dismissed claims. Plaintiffs opposed the motion, and then, on October 22, 2008, they filed a "Cross-motion for Default Upon [Plaintiffs'] Counterclaim and for Relief From Judgment." In that filing, plaintiffs asked the court to enter a default judgment in plaintiffs' favor on their counterclaim-in-reply, or, in the event that the court found default was not appropriate, to order additional discovery and hold a trial on plaintiffs' previously dismissed claims.

Additionally, in the October 22, 2008 filing, plaintiffs sought relief from the district court's prior judgment based on a fraud on the court which was allegedly perpetrated by the Bank's attorneys and witnesses at trial. As is relevant to this appeal, plaintiffs alleged that the Bank's attorneys suborned false testimony that the Bank was not required to obtain regulatory approval for foreign exchange transfers under $100,000. To support their fraud on the court claim, plaintiffs attached an opinion from a Chinese lawyer practicing in Shanghai,

---

[1]Section 1607(b) provides that "[i]n any action brought by a foreign state, or in which a foreign state intervenes . . . the foreign state shall not be accorded immunity with respect to any counterclaim . . . arising out of the transaction or occurrence that is the subject matter of the claim of the foreign state."

which states, in relevant part, that the lawyer was unable to find a Chinese regulation permitting foreign exchange transfers of less than $100,000 without regulatory approval. Plaintiffs also pointed to the Bank's inability or unwillingness to produce the regulation in question at trial or on remand.

On March 18, 2009, just two days before a scheduled hearing on all pending motions, plaintiffs filed a pleading styled as an "Answer and Counterclaim of Orient Mineral to Bank of China's Amended Counterclaim." This filing essentially reiterated the claims contained in plaintiffs' October 22, 2008 filing.

On March 20, 2009, the district court heard argument on the various pending motions and filings and took them under advisement. On February 18, 2010, the district court issued an order resolving all of the pending matters. As is relevant to this appeal, the district court: (1) granted plaintiffs' motion to dismiss the Bank's counterclaim; (2) dismissed plaintiffs' counterclaim-in-reply because, among other reasons, it was not filed within the district court's prescribed twenty-day window; and (3) refused to otherwise reconsider plaintiffs' previously dismissed claims because plaintiffs did not produce sufficient evidence that a fraud on the court had infected the trial.

Plaintiffs now appeal the district court's February 18, 2010 order. The Bank does not appeal the dismissal of its counterclaim.

## II. DISCUSSION

On appeal, plaintiffs persist in their attempt to revive various claims which were dismissed in prior proceedings. First, plaintiffs argue that, on remand, the Bank's assertion of its counterclaim opened the jurisdictional door to plaintiffs' previously dismissed claims. Second, plaintiffs contend that we should reconsider our prior opinion in this case because our analysis of the FSIA's commercial activity exception is clearly erroneous. Third, plaintiffs further argue that we should reconsider our prior opinion in this case based on clear and convincing evidence that a fraud on the court occurred at trial. Fourth, and finally, plaintiffs request that we remand the case for a new trial before a "new and unbiased" district court judge.

As for the first claim, we need not delve into plaintiffs' contention that, under § 1607(b), the Bank's assertion of its counterclaim on remand opened the jurisdictional door to plaintiffs' counterclaim-in-reply and all of the previously dismissed claims contained therein. Indeed, because plaintiffs did not file their counterclaim-in-reply within the district court's prescribed twenty-day window, the district court correctly dismissed that filing as untimely. *See United States v. Elmes*, 532 F.3d 1138 (11th Cir. 2008) ("[T]he plain language of Rule 12(a)(4) specifies that the district court may alter by order the specified time period for a party to file a responsive pleading.").

Next, even if we were persuaded that the prior panel's opinion in this case was clearly erroneous, "[w]e are bound by the precedent of prior panels absent en

banc reconsideration or a superseding contrary decision by the Supreme Court."
*In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993).

Lastly, we agree with the district court's conclusion that plaintiffs' fraud on the court argument is entirely without merit. "Fraud on the court . . . is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury." *Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985) (en banc). To establish fraud on the court, one must prove that "the impartial functions of the court have been directly corrupted." *Id*. Furthermore, the party alleging fraud on the court bears a heavy burden to prove the fraud by clear and convincing evidence, and "all doubts must be resolved in favor of the finality of the judgment." *Id*. Indeed, a party alleging fraud on the court must demonstrate "conscious wrongdoing [, which] can properly be characterized as a deliberate scheme to defraud[,] before relief from final judgment is appropriate." *Robinson v. Audi Aktiengesellschaft*, 56 F.3d 1259, 1267 (10th Cir. 1995).

We take allegations of fraud on the court very seriously because any time a judgment is procured by fraud it greatly undermines the legitimacy of the entire judicial system. Plaintiffs maintain that the Bank's attorney suborned false expert testimony that a Chinese banking regulation permitted foreign exchange transfers of less than $100,000 without regulatory approval. In support of this accusation, plaintiffs point to their own experts' testimony that no such regulation exists and

to the Bank's inability or unwillingness to produce the actual regulation at trial or on remand.

This paucity of evidence is grossly insufficient to establish a fraud on the court. Rather, plaintiffs' evidence merely demonstrates that, as is often the case, the parties' experts disagreed at trial about a matter which was within their area of expertise. We admonish plaintiffs' counsel that it is inappropriate to level such a serious charge against opposing counsel with little more than conflicting expert testimony to support it.[2]

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM the order of the district court.


ENTERED FOR THE COURT,


Deanell Reece Tacha
Senior Circuit Judge

---

[2]Because we affirm the district court in all respects, we need not consider in detail plaintiffs' request that we remand for a new trial before a "new and unbiased" district court judge. Nevertheless, we note that plaintiffs have produced no meaningful evidence in support of their claim that the district court judge who presided over this case harbored any prejudice against them. We admonish plaintiffs' counsel that it is inappropriate to make accusations impugning the integrity and honesty of judges without solid evidence to support such serious charges.